IN THE CIRCUIT COURT OF SEVIER COUNTY, TENNESSEE
AT SEVIERVILLE

ROCKY WATERS MOTOR INN, LLC,

    Plaintiff,

v.

THE TRAVELERS INDEMNITY
COMPANY OF AMERICA,

    Defendant.

No: 18-CV-787-II
JURY DEMANDED

## COMPLAINT

COMES NOW the Plaintiff, Rocky Waters Motor Inn, LLC, by and through counsel, and submits the following for its Complaint against The Travelers Indemnity Company of America:

### PARTIES AND JURISDICTION

1. Rocky Waters Motor Inn, LLC, formerly known as Rocky Waters Motel, Inc. and doing business as Rocky Waters Motor Inn and Days Inn on the River ("Plaintiff"), is a Tennessee limited liability company with its principal office located at 333 Parkway, Gatlinburg, Tennessee. Plaintiff's members are residents of the State of Tennessee. At all times relevant hereto, Plaintiff was the owner of the structures and business personal property located at 333 Parkway, Gatlinburg, Tennessee ("Motor Inn") and 324 Hemlock Street, Gatlinburg, Tennessee ("Days Inn"). The Motor Inn and Days Inn will be collectively referred to as the "Insured Premises" throughout.

2. The Travelers Indemnity Company of America ("Defendant") is an insurance company conducting business in the State of Tennessee, including Sevier County, Tennessee. Defendant's principal place of business is located in Hartford, Connecticut, and Defendant was incorporated under the laws of the State of Connecticut.



3. This Complaint originates as the result of the November 2016 wildfires and an associated windstorm that caused substantial insured losses to the structures located on the Insured Premises, and Defendant's failure and refusal to (a) promptly and fully pay Plaintiff's insurance claim, and (b) allow the insurance policy's appraisal clause to resolve the parties' dispute concerning the amount of the loss.

4. Jurisdiction and venue are proper in this Court.

## FACTS

5. At all times relevant hereto, Plaintiff was insured pursuant to an insurance contract whereby Defendant agreed to insure the commercial buildings located at the Insured Premises against property damage, bearing Policy No. I-660-7396B782 (the "Policy"). As relevant hereto, the Policy's term was April 11, 2016 to April 11, 2017.

6. At all times relevant hereto, the Insured Premises consisted of commercial buildings and the surrounding area, which Plaintiff operated as hotels known as the Motor Inn and the Days Inn.

7. The Policy provided insurance coverage for direct physical loss to the buildings located on the Insured Premises and such other insurance coverage as specifically set forth in the Policy.

8. The Declarations page of the Policy reflects that insurance coverage was provided for the buildings, business personal property, and loss of business income/extra expense located on the Insured Premises. The structure limit on the Motel Inn was $2,904,712. The structure limit on the Day's Inn was $3,490,253.

9. The Policy was an "all-risks" policy, meaning that the Policy covered all risks of direct physical loss or damage except for those specifically excluded or limited by the Policy.

2

10. The Policy's coverage for the buildings and structures on the Insured Premises was on a replacement cost valuation basis, which means that coverage is provided on a replacement cost basis without deduction for depreciation.

11. Pursuant to the Policy, Plaintiff paid an annual premium to Defendant in exchange for insurance coverage. Plaintiff paid the required premiums at all times relevant to this Complaint.

12. On November 28, 2016, the buildings located on the Insured Premises were infested and damaged by the accumulation of soot, ash residue, and other wildfire debris generated as a result of the Chimney Tops 2 wildfire that struck the area, resulting in substantial direct, physical loss. The direct physical loss and damage to the buildings and business personal property at the Insured Premises shall hereafter be referred to as the "Loss."

13. The Chimney Tops 2 wildfire started in the Chimney Tops area of the Great Smoky Mountains National Park, approximately 5.5 miles south of the City of Gatlinburg. A high wind-driven firestorm on November 28, 2016 and into November 29, 2016 pushed the wildfire, smoke, and embers into Gatlinburg and led to evacuation of most city residences and visitors, impacting over 2,500 structures, and resulting in three deaths in the city and eleven more in Sevier County. The evacuation order was lifted on December 9, 2016.

14. Conditions at the Insured Premises at the time of the firestorm included thick smoke, with extremely low visibility, twilight illumination, falling ash resembling snow, high winds (over seventy miles per hour), and flying debris. The interiors of the Motel Inn and Days Inn at the Insured Premises were smoky with fire debris in the air. Air quality remained hazy and poor for several days after the firestorm.

3

15. After the wildfire, Plaintiff filed an insurance claim with Defendant. The Motor Inn was assigned a claim number of BMM 1307. The Days Inn was assigned a claim number of BMM 1071.

16. While Defendant did make partial payments on both the Motor Inn (Structure - $77,466.06; Contents - $24,659.36) and the Day's Inn (Structure - $126,922.44; Contents - $43,307.68), Defendant failed to sufficiently investigate the Loss to the Motor Inn and Days Inn and to determine the actual and real scope of damages from the Loss.

17. Despite Plaintiff spending significant sums and working diligently to repair the damage from the Loss, Plaintiff continues to experience smoke odors and other problems as a result of the Loss.

18. For unknown reasons, Defendant did not have any testing done by experts to determine the presence or lack thereof of soot/char from the Loss on the surfaces, wall cavities, attics, and duct work.

19. After the Loss, the Insured Premises, including, but not limited to, the attic assemblies, CMU block room divider walls, interior partition walls, ducting, and other building components were contaminated with soot, smoke residue, char, ash, and wildfire residue. The wildfire residue was not present before the Loss.

20. Plaintiff promptly reported the Loss to Defendant.

21. Plaintiff fulfilled all of the duties after the Loss that were imposed upon it by the Policy to the satisfaction of Defendant.

22. As it relates to the Loss, there is no applicable exclusion. The Loss is a compensable claim under the Policy.

4

23.     Defendant has acknowledged that the Loss is a compensable claim and has made partial payments on the claim for the preliminary remediation work performed by Plaintiff.

24.     Despite the fact that Plaintiff has fulfilled all duties imposed upon it by Defendant and is at no fault in this matter, Defendant has wrongfully refused to fully and promptly pay Plaintiff's claim for insurance proceeds.

25.     The payments made by Defendant to Plaintiff were insufficient to indemnify Plaintiff for the Loss and restore the Insured Premises to pre-loss condition pursuant to the Policy.

26.     Plaintiff advised Defendant that the payments made were insufficient to indemnify it for the damage to the Insured Premises from the Loss.

27.     By letter dated December 27, 2017, Plaintiff advised Defendant that it was invoking the Policy's appraisal clause because of the lack of an agreement between Plaintiff and Defendant regarding the amount of the loss.

28.     The Policy's appraisal clause provides as follows:

**Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

    a.    Pay its chosen appraiser; and
    b.    Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we still retain our right to deny the claim.

5

Case 3:19-cv-00006-TAV-HBG   Document 1-1   Filed 01/03/19   Page 5 of 14   PageID #: 8

29. Plaintiff selected Chuck Howarth ("Howarth"), President of The Howarth Group, as its appraiser. Defendant refused to select an appraiser. Defendant also refused to move forward with the appraisal process.

30. In response to Plaintiff's appraisal demand, Defendant denied Plaintiff's request for appraisal and asked that the expert reports that were being gathered by Howarth, Plaintiff's appraiser, be submitted.

31. On or around April 4, 2018, Howarth, as the Plaintiff's appraiser, forwarded his valuation of the damage from the Loss to Defendant, including an estimate of repairs, a report prepared by Forensic Building Sciences, Inc. ("FBS"), sample results, and sample chain of custody with regard to both the Motor Inn and the Day's Inn. The FBS Report indicated that the "property in question . . . has been damaged by the wildfire through the deposition of soot and ash throughout the attic assemblies, CMU block room divider walls, interior partition walls, and ducting."

32. Thereafter, on May 22, 2018, Travelers sent DND Construction Services and S&ME, Inc. (industrial hygienist) to the Insured Premises to perform an inspection. During this inspection, neither DND Construction Services or S&ME, Inc. performed any testing nor took any samples to determine the presence of soot, smoke, or ash in the locations determined by the FBS Report.

33. After the inspection by DND Construction Services and S&ME, Inc., they issued reports on June 26, 2018 and June 21, 2018 respectively, claiming that there was no additional damage to scope and no additional testing needed at the Insured Premises.

34. Three months after the May 22, 2018 inspection, on August 22, 2018, Travelers sent a letter claiming that there was "no additional building damages caused by the forest fires" and once again refused to participate in the appraisal process.

35. In response, on September 3, 2018, Plaintiff wrote Defendant, explaining "that the scope allowed by Travelers (a simple cleaning) was not sufficient to restore the property to pre-loss condition and providing notice of Plaintiff's intent to sue for bad faith.

36. On September 7, 2018, Defendant replied to Plaintiff, once again denying Plaintiff's request for appraisal.

37. On September 13, 2018, Plaintiff again e-mailed Defendant, stating that Plaintiff continued to experience smoke odors and problems after Defendant's initial valuation of the Loss. Plaintiff further pointed out that Howarth was the first person to bring in experts to test surfaces and cavities for the presence of soot/char from the fire and confirmed the presence of same in places not included in Defendant's original scope. Still, Defendant ignored this and performed no testing. Plaintiff also asked Defendant to reconsider its earlier decision on appraisal.

38. On September 24, 2018, Defendant once again responded, ignoring the information it had been provided by Plaintiff and declining the request for appraisal.

39. Plaintiff replied to Defendant on October 10, 2018 and requested assistance once again.

40. Defendant, however, responded on October 23, 2018, denying Plaintiff's request for appraisal.

41. Wildfire residue exists in the buildings at the Insured Premises that was not present prior to the November 2016 wildfire.

42. Defendant has not properly paid to clean, seal, and paint numerous infested areas of the Insured Premises. Standard protocol also requires post-cleaning testing (which Defendant did not request nor pay for).

7

43. The basis for Defendant's denial of Plaintiff's appraisal demand was that "[a]ppraisal is not appropriate to determine the existence of damage or causation" and that "no coverage will be afforded for the additional building damages as our investigation found no additional direct physical loss or damage from the claimed event." This is not true, as evidenced by sample testing conducted by FBS. There are no coverage issues, but instead the parties' dispute is limited to the amount of the loss.

44. Defendant's decision to deny further payment, or even to allow appraisal to resolve the dispute, is unconscionable.

45. Defendant's proposed scope to clean the building did not appropriately remedy the deposits of smoke and soot all over and within the surfaces and cavities of the Insured Premises, including areas which Defendant has never paid to clean, repair or restore.

46. Plaintiff has not been properly compensated for the damage to the Insured Premises. A smoke odor is still present, and soot testing has confirmed the presence of wildfire residue in places for which Defendant has not paid to clean, treat, or properly repair.

47. Defendant refused, and still refuses, to make full payment to Plaintiff for its covered loss. Defendant refused, and still refuses, to allow the contractual appraisal process to resolve the parties' dispute concerning the amount of the loss.

48. Defendant's failure and refusal to pay Plaintiff the amounts owed to it for the Loss, and Defendant's refusal to submit the dispute over the amount of loss to appraisal, is without justification, and was intentional, fraudulent, malicious and/or reckless.

49. Defendant's failure and refusal to pay the money and benefits due and owing Plaintiff under the Policy and refusal to submit the claim to appraisal has caused Plaintiff to initiate this Complaint to recover the insurance proceeds to which it is entitled.

8

## CAUSES OF ACTION

### Count 1 – Breach of Contract

50. The allegations contained in the paragraphs above in this Complaint are incorporated herein by reference as if set forth verbatim.

51. The Policy issued by Defendant is a binding contract and is supported by valid consideration.

52. Defendant is in total material breach of the Policy, and Defendant is liable to Plaintiff in the maximum amount allowed by the Policy for the Loss. Specifically, Defendant's breach of contract includes the following, without limitation: (a) Defendant's failure and refusal to pay the amounts owed to Plaintiff for the Loss under the Building and Personal Property coverages afforded by the Policy; (b) Defendant's failure and refusal to pay such other amounts to Plaintiff as may be required by the Policy; and (c) Defendant's refusal to honor Plaintiff's demand for appraisal as outlined in the Policy.

53. As a result of Defendant's breach of contract, Plaintiff has sustained substantial compensable losses for the amounts claimed under the Policy, plus consequential damages.

54. Defendant is liable to Plaintiff for its losses.

55. Defendant's breach of contract was intentional, fraudulent, malicious, and/or reckless, therefore justifying an award of punitive damages. *See, e.g., Riad v. Erie Ins. Exchange*, 436 S.W.3d 256, 276 (Tenn. Ct. App. Oct. 31, 2013). Specifically, Defendant intentionally, fraudulently, maliciously, and/or recklessly: (1) failed to effectuate a prompt and fair settlement of Plaintiff's claim when liability was reasonably clear; (2) refused and failed to conduct a reasonable, prompt, and fair investigation concerning the issues surrounding Plaintiff's claim for insurance proceeds; (3) unjustly refused and/or failed to pay Plaintiff's claim for its own financial

9

preservation with no reasonable or justifiable basis; (4) refused payment on Plaintiff's claim for no valid reason whatsoever; (5) failed to treat Plaintiff's interests with equal regard to its own; (6) promised prompt action and claim-handling, but then failed to provide full payment or even any prompt communication or status reports; (7) failed and refused to pay for obvious damage caused by the Loss; (8) failed to timely investigate, scope, and estimate the Loss; (9) knew the true facts that the buildings were damaged but falsely represented to Plaintiff that only cleaning was needed and ignored areas for which no compensation has been paid; (10) misrepresented to Plaintiff that only cleaning was needed when Defendant knew it had not paid for the full restoration of all affected areas; (11) refused Plaintiff's contractual right to resolve its dispute with Defendant concerning the amount of the loss in order to protect Defendant's own financial interest to the detriment of Plaintiff; (12) concealed important and material facts from Plaintiff in an effort to minimize the amount Defendant would have to pay on the claim; (13) misrepresented relevant facts and policy provisions to Plaintiff; (14) failed to adopt and implement reasonable standards for the prompt investigation and settlement of claims; (15) forced Plaintiff to file suit to enforce its rights under the Policy; (16) represented to Plaintiff that there was no wildfire residue infestation at the Insured Premises without even first performing industry standard sample testing; and (17) such other facts and circumstances as alleged in this lawsuit and/or to be determined during discovery and which will be shown at trial. Defendant knew, or reasonably should have known, that Plaintiff was justifiably relying on the money and benefits due it under the terms of the Policy. Nevertheless, acting with conscious disregard for Plaintiff's rights and with the intention of causing or willfully disregarding the probability of causing unjust and cruel hardship on Plaintiff, Defendant consciously ignored Plaintiff's valid claim and then denied Plaintiff's claim and withheld monies and benefits rightfully due Plaintiff.

56. Plaintiff seeks, and is entitled to, punitive damages.

**Count 2 – Statutory Bad Faith**

57. The allegations contained in the paragraphs above in this Complaint are incorporated herein by reference as if set forth verbatim.

58. Defendant's refusal and failure to pay the amounts contractually owed to Plaintiff is arbitrary and capricious and constitutes bad faith pursuant to Tenn. Code Ann. § 56-7-105 in that more than sixty (60) days have passed since a formal demand has been made on Defendant and full payment has not been made for the Loss as required pursuant to the Policy, for which the twenty-five percent (25%) statutory penalty for bad faith should be invoked.

59. The bad faith of Defendant is evidenced by the fact that, at all times material hereto, Defendant knew, or reasonably should have known that Plaintiff was justifiably relying on the money and benefits due it under the terms of the Policy and as otherwise promised and represented by Defendant, as well as the actions of Defendant as set forth in paragraph 60 below and 55 above. Nevertheless, acting with conscious disregard for Plaintiff's rights and with the intention of causing or willfully disregarding the probability of causing unjust and cruel hardship on Plaintiff, Defendant consciously refused to pay in full Plaintiff's valid claim and withheld monies and benefits rightfully due to Plaintiff.

60. Defendant's bad faith is evidenced by all of the facts and allegations set forth above in this Complaint, together with the following:

   a. Defendant's intentional failure to fully inform Plaintiff of its rights and obligations under the Policy;

b. Defendant's intentional failure to attempt in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff's claim when liability was reasonably clear;

c. Defendant's intentional refusal to pay Plaintiff's claim in full and to otherwise honor its obligations under the Policy without conducting a reasonable investigation based on all available information;

d. Defendant's intentional refusal to fully investigate Plaintiff's claim and to obtain all available information before alleging that it had no further obligations to Plaintiff;

e. Defendant's failure to promptly provide Plaintiff with a reasonable and accurate explanation for its refusal to pay its claim in full;

f. Defendant's intentional failure to properly adjust Plaintiff's claim and to pay Plaintiff fully for its losses;

g. Defendant's intentional failure to pay all amounts due and owing to Plaintiff under the Policy with no reasonable or justifiable basis; and

h. Defendant's unjustified refusal to pay Plaintiff's claim for its own financial preservation.

61. In so acting, Defendant intended to and did injure Plaintiff in order to protect its own financial interests and should be punished via the twenty-five percent (25%) bad faith penalty authorized by statute.

WHEREFORE, as a result of the foregoing, Plaintiff would respectfully request that this Honorable Court award a judgment to Plaintiff as follows:

A. For compensatory damages to Plaintiff against Defendant not to exceed $2,500,000.00;

B. For punitive damages against Defendant in an amount to be determined by the jury but not to exceed nine times the amount of compensatory damages awarded to Plaintiff or such other amount as allowed by law;

C. For specific performance of the Policy's appraisal clause;

D. For a statutory bad faith penalty of twenty-five percent (25%);

E. For all costs incurred by Plaintiff as a result of this action;

F. For pre- and post-judgment interest; and

G. For such other further and general relief as this Court deems just and equitable.

## **JURY DEMAND**

Plaintiff demands a jury.

Respectfully submitted,

GILBERT McWHERTER
SCOTT & BOBBITT PLC

_____
J. BRANDON McWHERTER #21600
bmcwherter@gilbertfirm.com
JONATHAN L. BOBBITT #23515
jbobbitt@gilbertfirm.com
341 Cool Springs Blvd, Suite 230
Franklin, TN 37067
Telephone: (615) 354-1144

CLINTON H. SCOTT #23008
cscott@gilbertfirm.com
101 North Highland
Jackson, Tennessee 38301
Telephone: (731) 664-1340

*Attorneys for Plaintiff*

## COST BOND

This firm stands as surety for costs in this cause.

GILBERT McWHERTER
SCOTT & BOBBITT PLC

_____

14