## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **ROCKY WATERS MOTOR INN, LLC** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Docket No.    3:19-CV-6** |
| | ) | |
| **THE TRAVELERS INDEMNITY** | ) | *(Removed from Sevier County Circuit* |
| **COMPANY OF AMERICA,** | ) | *Court, case number 18-CV-7887 II)* |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES

NOW COMES Defendant, The Travelers Indemnity Company of America ("Travelers"), by and through its attorneys, and for its Answer and Affirmative Defenses, states as follows:

## PARTIES AND JURISDICTION

1.      Rocky Waters Motor Inn, LLC, formerly known as Rocky Waters Motel, Inc. and doing business as Rocky Waters Motor Inn and Days Inn on the River ("Plaintiff"), is a Tennessee limited liability company with its principal office located at 333 Parkway, Gatlinburg, Tennessee. Plaintiff's members are residents of the State of Tennessee. At all times relevant hereto, Plaintiff was the owner of the structures and business personal property located at 333 Parkway, Gatlinburg, Tennessee ("Motor Inn") and 324 Hemlock Street, Gatlinburg, Tennessee ("Days Inn"). The Motor Inn and Days Inn will be collectively referred to as the "Insured Premises" throughout.

**ANSWER:**      Travelers admits that Plaintiff is a Tennessee limited liability company, and its members are Tennessee residents. Travelers lacks sufficient information on which to admit or deny the remaining allegations in paragraph 1 and, therefore, demands strict proof thereof.

1

2.     The Travelers Indemnity Company of America ("Defendant") is an insurance company conducting business in the State of Tennessee, including Sevier County, Tennessee. Defendant's principal place of business is located in Hartford, Connecticut, and Defendant was incorporated under the laws of the State of Connecticut.

**ANSWER:**     Travelers admits the allegations set forth in paragraph 2.

3.     This Complaint originates as the result of the November 2016 wildfires and associated windstorm that caused substantial insured losses to the structures located on the Insured Premises, and Defendant's failure and refusal to (a) promptly and fully pay Plaintiff's insurance claim, and (b) allow the insurance policy's appraisal clause to resolve the parties' dispute concerning the amount of the loss.

**ANSWER:**     Travelers admits that Plaintiff's loss arises from the referenced wildfires. Travelers denies the remaining allegations set forth in paragraph 3.

4.     Jurisdiction and venue are proper in this Court.

**ANSWER:**     Travelers admits that jurisdiction and venue are proper in the United States District Court for the Eastern District of Tennessee.

## FACTS

5.     At all times relevant hereto, Plaintiff was insured pursuant to an insurance contract whereby Defendant agreed to insure the commercial buildings located at the Insured Premises against property damage, bearing Policy No. I-660-7396B782 (the "Policy"). As relevant hereto, the Policy's term was April 11, 2016 to April 11, 2017.

**ANSWER:**     Travelers admits that it issued the Policy to Plaintiff, and that the Policy covers direct physical loss of or damage to covered property, subject to all terms, conditions, limitations, and exclusions set forth in the Policy.

6.     At all times relevant hereto, the Insured Premises consisted of commercial buildings and the surrounding area, which Plaintiff operated as hotels known as the Motor Inn and the Days Inn.

**ANSWER:**     Travelers admits that it insured the buildings designated in the Policy. Travelers denies

2

that it insured any "surrounding areas" beyond the covered property identified in the Policy. Upon information and belief, Travelers admits that Plaintiff operated hotels known as the Motor Inn and the Days Inn.

7.      The Policy provided insurance coverage for direct physical loss to the buildings located

on the Insured Premises and such other insurance coverage as specifically set forth in the

Policy.

**ANSWER:**      Travelers admits only that it insured the buildings designated in the Policy against direct physical loss of or damage to covered property, subject to all terms, conditions, limitations, and exclusions set forth in the Policy. To the extent the allegations of paragraph 7 suggest otherwise, Travelers denies said allegations.

8.      The Declarations page of the Policy reflects that insurance coverage was provided for

the buildings, business personal property, and loss of business income/extra expense located on the

Insured Premises. The structure limit on the Motel Inn was $2,904,712. The structure limit on the Day's

Inn was $3,490,253.

**ANSWER:**      Travelers admits only that it insured the buildings designated as Building 0001 and Building 0002 in the Policy, subject to all terms, conditions, limitations, and exclusions in the Policy, and that the building damage policy limit was $2,904,712 for Building 0001 and $3,409,253 for Building 0002. Further answering Travelers admits that the Policy also covered business personal property and business income/extra expense subject to all terms, conditions, limitations, and exclusions in the Policy. To the extent the allegations of paragraph 8 suggest otherwise, Travelers denies said allegations.

9.      The Policy was an "all-risks" policy, meaning that the Policy covered all risks of direct

physical loss or damage except for those specifically excluded or limited by the Policy.

**ANSWER:**      Travelers admits only that the Policy provided coverage pursuant to its terms, conditions, limitations, and exclusions. Travelers denies the remaining allegations set forth in paragraph 9.

10.      The Policy's coverage for the buildings and structures on the Insured Premises was on a

replacement cost valuation basis, which means that coverage is provided on a replacement cost basis

without deduction for depreciation.

**ANSWER:**      Travelers admits only that the subject buildings were insured on a replacement cost

3

basis, subject to all the terms, conditions, limitations, and exclusions set forth in the Policy. Travelers denies the remaining allegations set forth in paragraph 10.

11.     Pursuant to the Policy, Plaintiff paid an annual premium to Defendant in exchange for insurance coverage. Plaintiff paid the required premiums at all times relevant to this Complaint.

**ANSWER:**    Travelers admits the allegations set forth in paragraph 11.

12.     On November 28, 2016, the buildings located on the Insured Premises were infested and damaged by the accumulation of soot, ash residue, and other wildfire debris generated as a result of the Chimney Tops 2 wildfire that struck the area, resulting in substantial direct, physical loss. The direct physical loss and damage to the buildings and business personal property at the Insured Premises shall hereafter be referred to as the "Loss."

**ANSWER:**    Travelers denies the allegations in the form alleged. Travelers admits only that the subject property sustained some damage by wildfire on or around November 28, 2016, but denies that it sustained damage to the extent claimed and denies all remaining allegations of Paragraph 12.

13.     The Chimney Tops 2 wildfire started in the Chimney Tops area of the Great Smoky Mountains National Park, approximately 5.5 miles south of the City of Gatlinburg. A high wind driven firestorm on November 28, 2016 and into November 29, 2016 pushed the wildfire, smoke, and embers into Gatlinburg and led to evacuation of most city residences and visitors, impacting over 2,500 structures, and resulting in three deaths in the city and eleven more in Sevier County. The evacuation order was lifted on December 9, 2016.

**ANSWER:**    Travelers lacks sufficient information on which to admit or deny the allegations set forth in paragraph 13 and, therefore, neither admits nor denies same.

14.     Conditions at the Insured Premises at the time of the firestorm included thick smoke, with extremely low visibility, twilight illumination, falling ash resembling snow, high winds (over seventy miles per hour), and flying debris. The interiors of the Motel Inn and Days Inn at the Insured

Premises were smoky with fire debris in the air. Air quality remained hazy and poor for several days after the firestorm.

**ANSWER:**   Travelers lacks sufficient information on which to admit or deny the allegations set forth in paragraph 14 and, therefore, neither admits nor denies same.

15.   After the wildfire, Plaintiff filed an insurance claim with Defendant. The Motor Inn was assigned a claim number of BMM 1307. The Days Inn was assigned a claim number of BMM 1071.

**ANSWER:**   Travelers admits that Plaintiff notified Travelers of an insurance claim after the wildfire and that Travelers assigned the referenced claim numbers to the claims at issue. Travelers denies the remaining allegations set forth in paragraph 15.

16.   While Defendant did make partial payments on both the Motor Inn (Structure - $77,466.06; Contents -$24,659.36) and the Day's Inn (Structure -$126,922.44; Contents - $43,307.68); Defendant failed to sufficiently investigate the Loss to the Motor Inn and Days Inn and to determine the actual and real scope of damages from the Loss.

**ANSWER:**   Travelers admits only that it made payments for covered damages in the amounts alleged. Travelers denies the remaining allegations set forth in paragraph 16.

17.   Despite Plaintiff spending significant sums and working diligently to repair the Loss, Plaintiff continues to experience smoke odors and other problems as a result of the Loss.

**ANSWER:**   Travelers denies that Plaintiff continues to experience smoke odors. Travelers lacks sufficient information on which to admit or deny the remaining allegations set forth in paragraph 17 and, therefore, neither admits nor denies same.

18.   For unknown reasons, Defendant did not have any testing done by experts to determine the presence or lack thereof of soot/char from the Loss on the surfaces, wall cavities, attics, and duct work.

**ANSWER:**   Travelers admits that its consultant reviewed test results from samples taken by Plaintiff's consultant, but did not perform additional testing on separate samples. Travelers denies the remaining allegations set forth in paragraph 18.

19.   After the Loss, the Insured Premises, including, but not limited to, the attic assemblies,

5

CMU block room divider walls, interior partition walls, ducting, and other building components were contaminated with soot, smoke residue, char, ash, and wildfire residue. The wildfire residue was not present before the Loss.

**ANSWER:** Travelers denies the allegations set forth in paragraph 19.

20. Plaintiff promptly reported the Loss to Defendant.

**ANSWER:** Travelers admits the allegations set forth in paragraph 20.

21. Plaintiff fulfilled all of the duties after the Loss that were imposed upon it by the Policy to the satisfaction of Defendant.

**ANSWER:** Travelers denies the allegations set forth in paragraph 21.

22. As it relates to the Loss, there is no applicable exclusion. The Loss is a compensable claim under the Policy.

**ANSWER:** Travelers admits only that Plaintiff sustained some losses for which Travelers afforded coverage under the Policy. Travelers denies the remaining allegations set forth in paragraph 22.

23. Defendant has acknowledged that the Loss is a compensable claim and has made partial payments on the claim for the preliminary remediation work performed by Plaintiff.

**ANSWER:** Travelers admits only that Plaintiff sustained some losses for which Travelers afforded coverage under the Policy. Travelers denies the remaining allegations set forth in paragraph 23.

24. Despite the fact that Plaintiff has fulfilled all duties imposed upon it by Defendant and is at no fault in this matter, Defendant has wrongfully refused to fully and promptly pay Plaintiff's claim for insurance proceeds.

**ANSWER:** Travelers denies the allegations set forth in paragraph 24.

25. The payments made by Defendant to Plaintiff were insufficient to indemnify Plaintiff for the Loss and restore the Insured Premises to pre-loss condition pursuant to the Policy.

6

**ANSWER:**     Travelers denies the allegations set forth in paragraph 25.

26.     Plaintiff advised Defendant that the payments made were insufficient to indemnify it for the damage to the Insured Premises from the Loss

**ANSWER:**     Travelers admits that Plaintiff disputed the amount of Travelers' claim payment, but denies any obligation to make further payment under the Policy.

27.     By letter dated December 27, 2017, Plaintiff advised Defendant that it was invoking the Policy's appraisal clause because of the lack of an agreement between Plaintiff and Defendant regarding the amount of the loss.

**ANSWER:**     Travelers admits that Plaintiff demanded appraisal. Travelers denies the remaining allegations set forth in paragraph 27.

28.     The Policy's appraisal clause provides as follows:

**Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

7

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we still retain our right to deny the claim.

**ANSWER:**     Travelers admits the allegations set forth in paragraph 28.

29.     Plaintiff selected Chuck Howarth ("Howarth"), President of The Howarth Group, as its appraiser. Defendant refused to select an appraiser. Defendant also refused to move forward with the appraisal process.

**ANSWER:**     Travelers admits that Plaintiff selected Mr. Howarth as its purported "appraiser".

Travelers denies the remaining allegations set forth in paragraph 29.

30.     In response to Plaintiff's appraisal demand, Defendant denied Plaintiff's request for appraisal and asked that the expert reports that were being gathered by Howarth, Plaintiff's appraiser, be submitted.

**ANSWER:**     Travelers admits that, in response to the appraisal demand from Howarth, Travelers requested that Plaintiff identify the additional damages that it was claiming and produce any estimates or reports supporting such claim for additional damages. Travelers denies the remaining allegations set forth in paragraph 30.

31.     On or around April 4, 2018, Howarth, as the Plaintiff's appraiser, forwarded his valuation of the damage from the Loss to Defendant, including an estimate of repairs, a report prepared by Forensic Building Sciences, Inc. ("FBS"), sample results, and sample chain of custody with regard to both the Motor Inn and the Day's Inn. The FBS Report indicated that the "property in question ... has been damaged by the wildfire through the deposition of soot and ash throughout the attic assemblies, CMU block room divider walls, interior partition walls, and ducting."

**ANSWER:**     Travelers denies the allegations of Paragraph 31.

8

32. Thereafter, on May 22, 2018, Travelers sent DND Construction Services and S&ME, Inc. (industrial hygienist) to the Insured Premises to perform an inspection. During this inspection, neither DND Construction Services or S&ME, Inc. performed any testing nor took any samples to determine the presence of soot, smoke, or ash in the locations determined by the FBS Report.

**ANSWER:** Travelers denies the allegations in the form alleged. Travelers admits only that on May 22, 2018, S&ME and DND Construction Services were sent to the subject properties to perform inspections. Further answering, Travelers admits only that neither DND Construction Services nor S&ME, Inc. performed any physical testing nor took any samples during these inspections. Travelers denies the remaining allegations to the extent inconsistent with the foregoing.

33. After the inspection by DND Construction Services and S&ME, Inc., they issued reports on June 26, 2018 and June 21, 2018 respectively, claiming that there was no additional damage to scope and no additional testing needed at the Insured Premises.

**ANSWER:** Travelers admits only that after their inspections, DND Construction Services and S&ME issued reports on June 26, 2018 and June 21, 2018 respectively, and the contents thereof are the best evidence of their findings. To the extent the allegations of Paragraph 33 are in any way inconsistent with those reports, said allegations are denied.

34. Three months after the May 22, 2018 inspection, on August 22, 2018, Travelers sent a letter claiming that there was "no additional building damages caused by the forest fires" and once again refused to participate in the appraisal process.

**ANSWER:** Travelers denies the allegations in the form alleged. Travelers admits only that on August 22, 2018 it sent two letters containing the quoted phrase. Travelers further admits that it rejected Plaintiff's request to appraise the additional building damages being claimed. To the extent the allegations of Paragraph 34 are in any way inconsistent with the foregoing, those allegations are denied.

35. In response, on September 3, 2018, Plaintiff wrote Defendant, explaining "that the scope allowed by Travelers (a simple cleaning) was not sufficient to restore the property to preloss condition and providing notice of Plaintiff's intent to sue for bad faith.

**ANSWER:** Travelers denies the allegations in the form alleged. Travelers admits only that on

9

September 3, 2018, two emails were sent from the account of Mahavir Patel claiming that "the scope allowed by Travelers (a simple cleaning) was not sufficient to restore the property to pre-loss condition." Travelers further admits that the same email stated that this was "notice of our intent to assert a cause of action for bad faith if the claim and appraisal demand are not honored, and that we will seek statutory damages for bad faith if Travelers refuses to honor its obligations." To the extent the allegations of Paragraph 35 are in any way inconsistent with the foregoing, those allegations are denied.

36.    On September 7, 2018, Defendant replied to Plaintiff, once again denying

Plaintiff's request for appraisal.

**ANSWER:**    Travelers denies the allegations in the form alleged. Travelers admits only that on September 7, 2018 Travelers sent a reply to each of Mr. Patel's emails stating that the appraisal process is intended to address differences in the valuation of property damages and that appraisal is not appropriate to determine the existence of damage or resolve questions of coverage or causation. To the extent the allegations of Paragraph 36 are in any way inconsistent with the foregoing, those allegations are denied.

37.    On September 13, 2018, Plaintiff again e-mailed Defendant, stating that Plaintiff

continued to experience smoke odors and problems after Defendant's initial valuation of the Loss.

Plaintiff further pointed out that Howarth was the first person to bring in experts to test surfaces and

cavities for the presence of soot/char from the fire and confirmed the presence of same in places not

included in Defendant's original scope. Still, Defendant ignored this and performed no testing. Plaintiff

also asked Defendant to reconsider its earlier decision on appraisal.

**ANSWER:**    Travelers denies the allegations in the form alleged. Travelers admits only that on September 13, 2018 another email from the account of Mr. Patel was sent to Travelers. The email itself is the best evidence of its contents and to the extent the allegation of Paragraph 37 are inconsistent with the email, those allegations are denied. Travelers denies the remain

38.    On September 24, 2018, Defendant once again responded, ignoring the information it

had been provided by Plaintiff and declining the request for appraisal.

**ANSWER:**    Travelers denies the allegations in the form alleged. Travelers admits that it sent Mr. Patel two emails on September 24, 2018 which were responsive to his email dated September 13, 2018. Travelers' emails provided in pertinent part as follows:

10

"Within your email response, you commented that you "continued to experience smoke odors and problems that made it clear to us that additional issues needed to be resolved." As noted previously, our subsequent inspection of the motel building confirmed the professional cleaning and painting, which were detailed within the Xactimate estimate, were not performed. The loss adjustment also allowed for deodorization of the building, which was not completed. Since the professional cleaning, painting and deodorization of the motel building were not completed, that may explain why you claim to have smoke odor related issues.

Other issues that may be causing smoke odor within the motel include:
1. The motel rooms with fire places.
2. Motel rooms designated as smoking rooms.

Please note the appraisal process is intended to address differences in the valuation of property damages. Appraisal is not appropriate to determine the existence of damage or resolve questions of coverage or causation. As explained in our prior letter, dated August 22, 2018, your request for appraisal is respectfully denied."

To the extent the allegations of Paragraph 38 are in any way inconsistent with the foregoing, those allegations are denied.

39.    Plaintiff replied to Defendant on October 10, 2018 and requested assistance once

again.

**ANSWER:**    Travelers denies the allegations set forth in paragraph 39 except Travelers admits that on October 10, 2018 two emails were sent to Travelers from Mr. Patel's account stating, among other things, as follows: "Please allow the appraisal process to proceed.  If you refuse, the next communication will be from my lawyer."

40.    Defendant, however, responded on October 23, 2018, denying Plaintiff's request

for appraisal.

**ANSWER:**    Travelers denies the allegations set forth in paragraph 40 except Travelers admits that on October 23, 2018 two emails were sent by Travelers to Mr. Patel's account reiterating that the appraisal process is intended to address differences in the valuation of property damages but appraisal is not appropriate to determine the existence of damage or resolve questions of coverage or causation.

41.    Wildfire residue exists in the buildings at the Insured Premises that was not present

prior to the November 2016 wildfire.

**ANSWER:**    Travelers denies the allegations of paragraph 41, except that Travelers admits that

11

professional cleaning, painting and deodorization, which were detailed within the Travelers estimate, were not performed by Plaintiff.

42.     Defendant has not properly paid to clean, seal, and paint numerous infested areas of the Insured Premises. Standard protocol also requires post-cleaning testing (which Defendant did not request nor pay for).

**ANSWER:**     Travelers denies the allegations set forth in paragraph 42.

43.     The basis for Defendant's denial of Plaintiff's appraisal demand was that "[a]ppraisal is not appropriate to determine the existence of damage or causation" and that "no coverage will be afforded for the additional building damages as our investigation found no additional direct physical loss or damage from the claimed event." This is not true, as evidenced by sample testing conducted by FBS. There are no coverage issues, but instead the parties' dispute is limited to the amount of the loss.

**ANSWER:**     Travelers admits only that it rejected Plaintiff's appraisal demand since the demand sought to appraise additional claimed building damage that, to the extent it existed, was not caused by the wildfire and was not covered by the Policy. Travelers denies the remaining allegations set forth in paragraph 43.

44.     Defendant's decision to deny further payment, or even to allow appraisal to resolve the dispute, is unconscionable.

**ANSWER:**     Travelers denies the allegations set forth in paragraph 44.

45.     Defendant's proposed scope to clean the building did not appropriately remedy the deposits of smoke and soot all over and within the surfaces and cavities of the Insured Premises, including areas which Defendant has never paid to clean, repair or restore.

**ANSWER:**     Travelers denies the allegations set forth in paragraph 45.

46.     Plaintiff has not been properly compensated for the damage to the Insured Premises. A smoke odor is still present, and soot testing has confirmed the presence of wildfire residue in places for

which Defendant has not paid to clean, treat, or properly repair.

**ANSWER:**     Travelers denies the allegations set forth in paragraph 46.

47.     Defendant refused, and still refuses, to make full payment to Plaintiff for its covered

loss. Defendant refused, and still refuses, to allow the contractual appraisal process to resolve the

parties' dispute concerning the amount of the loss.

**ANSWER:**     Travelers denies the allegations set forth in paragraph 47.

48.     Defendant's failure and refusal to pay Plaintiff the amounts owed to it for the Loss, and

Defendant's refusal to submit the dispute over the amount of loss to appraisal, is without ' justification,

and was intentional, fraudulent, malicious and/or reckless.

**ANSWER:**     Travelers denies the allegations set forth in paragraph 48.

49.     Defendant's failure and refusal to pay the money and benefits due and owing

Plaintiff under the Policy and refusal to submit the claim to appraisal has caused Plaintiff to initiate this

Complaint to recover the insurance proceeds to which it is entitled.

**ANSWER:**     Travelers denies the allegations set forth in paragraph 49.

## CAUSES OF ACTION

### Count 1— Breach of Contract

50.     The allegations contained in the paragraphs above in this Complaint are incorporated

herein by reference as if set forth verbatim.

**ANSWER:**     Travelers restates and realleges its responses to paragraphs 1 through 49 as if set forth
        fully herein.

51.     The Policy issued by Defendant is a binding contract and is supported by valid consideration.

**ANSWER:**     This paragraph alleges conclusions of law requiring neither affirmance nor denial.

52.     Defendant is in total material breach of the Policy, and Defendant is liable to Plaintiff in the maximum amount allowed by the Policy for the Loss. Specifically, Defendant's breach of contract includes the following, without limitation: (a) Defendant's failure and refusal to pay the amounts owed to Plaintiff for the Loss under the Building and Personal Property coverages afforded by the Policy; (b) Defendant's failure and refusal to pay such other amounts to Plaintiff as, may be required by the Policy; and (c) Defendant's refusal to honor Plaintiff's demand for appraisal as outlined in the Policy.

**ANSWER:**     Travelers denies the allegations set forth in paragraph 52.

53.     As a result of Defendant's breach of contract, Plaintiff has sustained substantial compensable losses for the amounts claimed under the Policy, plus consequential damages.

**ANSWER:**     Travelers denies the allegations set forth in paragraph 53.

54.     Defendant is liable to Plaintiff for its losses.

**ANSWER:**     Travelers denies the allegations set forth in paragraph 54.

55.     Defendant's breach of contract was intentional, fraudulent, malicious, and/or reckless, therefore justifying an award of punitive damages. See, e.g., Riad v. Erie Ins. Exchange, 436 S.W.3d 256, 276 (Tenn. Ct. App. Oct. 31, 2013). Specifically, Defendant intentionally, fraudulently, maliciously, and/or recklessly: (1) failed to effectuate a prompt and fair settlement of Plaintiff's claim when liability was reasonably clear; (2) refused and failed to conduct a reasonable, prompt, and fair investigation concerning the issues surrounding Plaintiff's claim for insurance proceeds; (3) unjustly refused and/or failed to pay Plaintiff's claim for its own financial preservation with no reasonable or

14

justifiable basis; (4) refused payment on Plaintiff's claim for no valid reason whatsoever; (5) failed to treat Plaintiff's interests with equal regard to its own; (6) promised prompt action and claim-handling, but then failed to provide full payment or even any prompt communication or status reports; (7) failed and refused to pay for obvious damage caused by the Loss; (8) failed to timely investigate, scope, and estimate the Loss; (9) knew the true facts that the buildings were damaged but falsely represented to Plaintiff that only cleaning was needed and ignored areas for which no compensation has been paid; (10) misrepresented to Plaintiff that only cleaning was needed while Defendant knew it had not paid for the full restoration of all affected areas; (11) refused Plaintiff's contractual right to resolve its dispute with Defendant concerning the amount of the loss in order to protect Defendant's own financial interest to the detriment of Plaintiff; (12) concealed important and material facts from Plaintiff in an effort to minimize the amount Defendant would have to pay on the claim; (13) misrepresented relevant facts and policy provisions to Plaintiff; (14) failed to adopt and implement reasonable standards for the prompt investigation and settlement of claims; (15) forced Plaintiff to file suit to enforce its rights under the Policy; (16) represented to Plaintiff that there was no wildfire residue infestation at the Insured Premises without even first performing industry standard sample testing; and (17) such other facts and circumstances as alleged in this lawsuit and/or to be determined during discovery and which will be shown at trial. Defendant knew, or reasonably should have known, that Plaintiff was justifiably relying on the money and benefits due it under the terms of the Policy. Nevertheless, acting with conscious disregard for Plaintiff's rights and with the intention of causing or willfully disregarding the probability of causing unjust and cruel hardship on Plaintiff; Defendant consciously ignored Plaintiff's valid claim and then denied Plaintiff's claim and withheld monies and benefits rightfully due Plaintiff.

**ANSWER:**     Travelers denies the allegations set forth in paragraph 55, subparts (1) through (17) inclusive.

56.     Plaintiff seeks, and is entitled to, punitive damages.

**ANSWER:**     Travelers denies the allegations set forth in paragraph 56.

### Count 2— Statutory Bad Faith

57.     The allegations contained in the paragraphs above in this Complaint are incorporated herein by reference as if set forth verbatim.

**ANSWER:**     Travelers restates its responses to paragraphs 1 through 57 as if set forth fully herein.

58.     Defendant's refusal and failure to pay the amounts contractually owed to Plaintiff is arbitrary and capricious and constitutes bad faith pursuant to Tenn. Code Ann. § 56-7-105 in that more than sixty (60) days have passed since a formal demand has been made on Defendant and full payment has not been made for the Loss as required pursuant to the Policy, for which the twenty-five percent (25%) statutory penalty for bad faith should be invoked.

**ANSWER:**     Travelers denies the allegations set forth in paragraph 58.

59.     The bad faith of Defendant is evidenced by the fact that, at all times material hereto, Defendant knew, or reasonably should have known that Plaintiff was justifiably relying on the money and benefits due it under the terms of the Policy and as otherwise promised and represented by Defendant, as well as the actions of Defendant as set forth in paragraph 60 below and 55 above. Nevertheless, acting with conscious disregard for Plaintiff's rights and with the intention of causing or willfully disregarding the probability of causing unjust and cruel hardship on Plaintiff, Defendant consciously refused to pay in full Plaintiff's valid claim and withheld monies and benefits rightfully due to Plaintiff.

**ANSWER:**     Travelers denies the allegations set forth in paragraph 59.

60.     Defendant's bad faith is evidenced by all of the facts and allegations set forth above in

16

this Complaint, together with the following:

      a. Defendant's intentional failure to fully inform Plaintiff of its rights and obligations under the Policy;

      b. Defendant's intentional failure to attempt in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff's claim when liability was reasonably clear;

      c. Defendant's intentional refusal to pay Plaintiff's claim in full and to otherwise honor its obligations under the Policy without conducting a reasonable investigation based on all available information;

      d. Defendant's intentional refusal to fully investigate Plaintiff s claim and to obtain all available information before alleging that it had no further obligations to Plaintiff;

      e. Defendant's failure to promptly provide Plaintiff with a reasonable and accurate explanation for its refusal to pay its claim in full;

      f. Defendant's intentional failure to properly adjust Plaintiff's claim and to pay Plaintiff fully for its losses;

      g. Defendant's intentional failure to pay all amounts due and owing to Plaintiff under the Policy with no reasonable or justifiable basis; and

      h. Defendant's unjustified refusal to pay Plaintiff's claim for its own financial preservation.

**ANSWER:**    Travelers denies the allegations set forth in paragraph 60, subparts (a) through (h) inclusive.

      61.    In so acting, Defendant intended to and did injure Plaintiff in order to protect its own financial interests and should be punished via the twenty-five percent (25%) bad faith penalty authorized by statute.

**ANSWER:**    Travelers denies the allegations set forth in paragraph 61.

      WHEREFORE Defendant, The Travelers Indemnity Company of America, prays that this Court enter judgment in its favor and against Plaintiff on all counts.

## **AFFIRMATIVE DEFENSES**

17

## Affirmative Defense No. 1

## (Appraisal – Failure to Appoint Competent and Impartial Appraiser)

1.    Travelers issued Commercial Insurance Policy No. I-660-7396B782 ("Policy") to

Plaintiff.

2.    The Policy provides as follows with respect to Appraisal:

**Appraisal**

If we and you disagree on the value of the property or the amount of loss, either
may make written demand for an appraisal of the loss. In this event, each party
will select a competent and impartial appraiser. The two appraisers will select an
umpire. If they cannot agree, either may request that selection be made by a
judge of a court having jurisdiction. The appraisers will state separately the
value of the property and amount of loss. If they fail to agree, they will submit
their differences to the umpire. A decision agreed to by any two will be binding.
Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we still retain our right to deny the claim.

3.    Plaintiff appointed Chuck Howarth as its appraiser.

4.    Mr. Howarth is a public adjuster.

5.    Mr. Howarth works exclusively for policyholders in insurance disputes.

6.    Mr. Howarth's website states that if his firm is retained, "[W]e will increase your

settlement or you owe us nothing."

7.    Mr. Howarth had a financial interest in the outcome of the appraisal.

9.    Mr. Howarth is not "competent and impartial" as required under the Policy.

10.   Travelers had no obligation to participate in the appraisal process, since Plaintiff failed

to appoint a competent and impartial appraiser.

18

## Affirmative Defense No. 2

## (Scope of Appraisal)

11.     The Policy's Appraisal provision permits appraisers to appraise the "amount of loss."

12.     The Policy's Appraisal provision does not permit appraisers to determine the cause or existence of damage.

13.     Plaintiff's appraisal demand was unlimited in scope, and sought appraisal of areas of the subject property that Plaintiff's own damage reports specified had char and soot particle counts in the ranges correlated to "negligible" or "limited" with regards to "smoke impact."

14.     Travelers was not obligated to participate in the appraisal process, since the appraisal demand included areas of the subject property with no physical damage caused by the wildfire.

## Affirmative Defense No. 3

## (Policy Exclusion for Damage Arising from Neglect)

15.     The Policy provides as follows:

B. Exclusions

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

\*\*\*

h. Neglect.

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

16.     In April 2012, Plaintiff sustained damage to its roofs in a hail storm.

17.     Plaintiff submitted an insurance claim to Travelers for the damage sustained to its roofs

19

in the 2012 hail storm.

18.    Travelers provided coverage to Plaintiff for the roof damage sustained in 2012 hail

storm.

19.    Plaintiff neglected to repair the roofs following the 2012 damage.

20.    The damages Plaintiff is seeking in this case arise, in part, from alleged wind damage, in

2016, to the roofs on the buildings at issue.

21.    To the extent that the roof damage Plaintiff maintains it sustained in the 2016

windstorm includes damage resulting from conditions that Plaintiff neglected to repair following the

2012 hail storm, the 2012 Policy does not provide coverage for such 2016 damage.

22.    The damages Plaintiff is seeking in this case also arise, in part, from claimed soot and

char damage.

23.    The claimed soot and char damage is based on particle counts taken from rooms in

which there was a wood burning fireplace.

24.    To the extent Plaintiff is claiming that these particle count samples reflect "damage" in

these rooms, the cause of the alleged "damage" is due to Plaintiff's neglect and not the wildfire.

### **Affirmative Defense No. 4**

### **(Faulty Maintenance)**

25.    The Policy provides as follows:

**B. Exclusions**

\*\*\*

3. We will not pay for loss or damage caused by or resulting from any of
the following, 3.a. through 3.c. But if an excluded cause of loss that is
listed in 3.a. and 3.b. results in a Covered Cause of Loss, we will pay for
the resulting loss or damage caused by that Covered Cause of Loss.

20

\*\*\*

c. Faulty, inadequate or defective:

(4) Maintenance;

of part or all of any property on or off the described premises.

26.    Plaintiff's claimed damages consist, in part, of wind damage to the roofs on the buildings at issue.

27.    Plaintiff sustained damage to its roofs in an April, 2012 hail storm.

28.    Travelers compensated Plaintiff for the damage sustained in the April, 2012 hail storm.

29.    Plaintiff failed to make any repairs to its roofs or otherwise maintain them following the April, 2012 hail storm.

30.    To the extent that Plaintiff's claimed damages include damage caused by Plaintiff's failure to repair damages from the April, 2012 hail storm or otherwise maintain the roofs, the Policy does not provide coverage.

31.    Plaintiff's claimed wildfire damages also include char and soot particle counts from samples collected from rooms with wood burning fireplaces. To the extent Plaintiff is claiming that these samples reflect "damage" in these rooms, the cause of the alleged "damage" is due to Plaintiff's faulty maintenance and not the wildfire.

## **Affirmative Defense No. 5**

### **(Accord and Satisfaction)**

32.    Travelers has paid $77,466.06 for building damage and $24,659.36 for business personal property at the Day's Inn.

33.    Travelers has paid $126,922.44 for building damage and $43,307.68 for business personal property at the Motor Inn.

21

34. Travelers' payments were offered and accepted as satisfaction of a disputed claim.

35. Travelers' payments constitute a valid accord and satisfaction for all damage caused by the wildfire at issue.

### **Affirmative Defense No. 6**

### **(Laches)**

36. Plaintiff filed the present action on November 28, 2018.

37. Plaintiff unreasonably delayed filing suit, and delayed demanding appraisal under the Policy.

38. Plaintiff's unreasonable delay in filing suit and demanding appraisal has prejudiced Travelers' ability to defend the allegations set forth in Plaintiff's Complaint.

### **Affirmative Defense No. 7**

### **(Contractual Suit Limitations)**

39. The Policy provides as follows:

**D. LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part; and

2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

40. To the extent that Plaintiff's claim includes damage that occurred more than two years before this action was filed, the Policy's Legal Action Against Us provision bars recovery.

### **Affirmative Defense No. 8**

### **(Actual Cash Value)**

22

41.     The Policy's Replacement Cost provision provides in part as follows:

e.   We will not pay on a replacement cost basis for any loss or damage:

(1) Until the lost or damaged property is actually repaired or replaced; and

(2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

42.     To the extent that Plaintiff has failed to repair or replace covered damaged property, or failed to replace covered damaged property as soon as reasonably possible after the fire, Plaintiff's recovery is limited to the actual cash value of the damaged property.

### Affirmative Defense No. 9

### (Deductible)

43.     The Policy includes a deductible of $1,000 per occurrence per building.

44.     To the extent that Plaintiff is entitled to additional insurance coverage, it is subject to the Policy's deductible.

### Affirmative Defense No. 10

### (Comparative Bad Faith)

45.     To the extent that BHHIC is held liable for bad faith, its liability must be reduced by Plaintiff's comparative bad faith.

### Affirmative Defense No. 11

### (Failure to State Claim)

46.     Plaintiff's complaint fails to state a claim on which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

WHEREFORE Defendant, The Travelers Indemnity Company of America, prays that this Court

enter judgment in its favor and against Plaintiff on all counts.

Respectfully submitted this 23rd day of January, 2019.

/s/Douglas R. Bergeron_____
Douglas R. Bergeron, BPR #017881
Clint J. Woodfin, BPR #016346
*Attorneys for Defendant*
800 South Gay Street
Ste. 1400
Knoxville, TN  37929
Phone: 865.244.4664
Fax: 865.673.8972
dbergeron@spicerfirm.com

24

<u>CERTIFICATE OF SERVICE</u>

  I hereby certify that on January 23, 2019 a copy of the foregoing Certificate of Corporate Interest was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. mail.  Parties may access this filing through the Court's electronic filing system.

  This 23rd day of January, 2019.

           /s/Douglas R. Bergeron_____

           Douglas R. Bergeron